**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

CASE NO. 25-20595
HON. DENISE PAGE HOOD

v.

PERCY LEWIS,

Defendant.
_______________________________________/

# ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE [ECF NO. 27]

## I. Introduction

Before the Court is Defendant Percy Lewis's ("Lewis") Motion to Suppress Evidence from a Warrantless Search. The indictment arises from the content found within Lewis's phone.

## II. Factual Background

On February 17, 2025, Lewis's niece ("W-1")[1] took the iPhone he had given her, changed the password, and brought it to the Wyandotte Police to show officers the child pornography she had discovered in his iCloud while using the device. [ECF No. 27, PageID.80]. Officers applied for a warrant and searched through Lewis' text

[1] "Witness-1"

messages, storage cloud, instant messages, photographs and other personal data. *Id.* On February 28, 2025, a criminal complaint was filed against Lewis for Receipt of Child Pornography in violation of 18 U.S.C 2252A(a)(2) and Possession of Child Pornography in violation of 18 U.S.C 2252A(a)5(B), for which he was subsequently arrested. [ECF No. 1, PageID.1]. On March 4, 2025, with advice of his counsel, he consented to detention due to "no address to return to." [ECF No. 22, PageID.46]. He was indicted on August 7, 2025, for the allegations contained within the February 28 complaint.[2]

An evidentiary hearing was held on March 24, 2026. Officer Heather Carpeaux ("Carpeaux") of the Wyandotte Police Department and Detective Chelsea Haskin ("Haskin") of the Wyandotte Police Department both testified.

Carpeaux testified that she was dispatched to the lobby of the Wyandotte Police Station, where W-1 wanted to make a complaint about the pornographic content she

---

[2] February of 2025, Lewis's cell phone was turned over to law enforcement, where they uncovered communications beginning in July 2023 through January 2025 between him and another individual discussing interest in sexually abusing children and multiple images and videos of child pornography. [ECF No. 23, PageID.54]. He discussed his desire to drug, rape, and assault underage boys. *Id.* He was involved in Zoom group calls and chats with other individuals who also possessed videos and pictures of minors engaging in sexual acts with adults. *Id.* The videos were recorded up to 10 minutes long. *Id.* In October 2024, Lewis asked an individual to help him meet up with a minor so that he could drug, rape, and assault him while the minor was not responsive. [ECF No. 23, PageID.58]. The individual stated that Lewis put drugs in the minor's drink and performed sexual acts on the minor while he was unconscious. *Id.*

had seen on the phone that Lewis had given her. Carpeaux further testified that she did not look at the phone, nor did W-1 present the phone to her.

Detective Haskin testified that she received and reviewed Carpeaux's police report concerning the statements W-1 made about seeing child pornography and evidence of sexual abuse of children on the iPhone that Lewis had given her. She further testified that W-1 met with her the following day to explain the contents she had seen on the phone and provided the phone to Haskin to view.

Haskin further testified that she did not ask for the phone and did not look through it. She stated that W-1 explained in detail what was on Lewis's phone and turned the phone screen toward her to show her the child pornography and text messages on the phone. She stated that she never instructed W-1 to go through the phone and that she never independently searched through the phone.

Haskin also testified that, after she saw the images and text messages depicting child pornography, she obtained a search warrant for the cell phone, and W-1 signed a consent form allowing Haskin to search the phone. Haskin further stated that she would have applied for a search warrant even if W-1 had not shown her the contents of the phone and had merely told her what she had seen on it. She explained that applying for the search warrant "covered her bases" because W-1 had only been in possession of the phone for two days.

## III. Applicable Law and Analysis:

Lewis argues that the warrantless search violated his Fourth Amendment constitutional rights. The Fourth Amendment guarantees the people's right "to be secure in their persons, houses, papers, and effects, against searches and seizures" Const. Amt. IV. The Amendment was adopted as a "response to the reviled 'general warrants' and 'writs of assistance' of the colonial era, which allowed British officers to rummage through homes in an unrestrained search for evidence of criminal activity." *Carpenter v. United States*, 585 U.S. 296, 303 (2018) (quoting *Riley v. California*, 573 U.S. 373, 403 (2014)). Accordingly, searches and seizures "without a warrant are presumptively unreasonable." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004). Further, people have privacy rights to the information stored in their cell phones and the data within. *See Riley v. California*, 573 U.S. 373, 403 (2014).[3] In *Riley*, the Supreme Court recognized that modern cell phones contain and may reveal "the privacies of life," and the fact that technology now allows an individual to carry such information in his hand does not make the information any less worthy of the protection under the Fourth Amendment. *Id.* at 403. The Supreme Court held that

[3] Modern cell phones are not just another technological convenience because with all they contain and may reveal, they hold for many Americans "the privacies of life," *Boyd*, supra, at 630, 6 S.Ct. 524.

police must obtain a warrant before searching a cell phone seized incident to an arrest. *Id.*

Lewis advances two primary arguments: (1) W-1 lacked common authority over his cell phone, and officers should have reasonably recognized this, making the search of his phone data unreasonable; and (2) he retained a reasonable expectation of privacy in his phone because he did not "abandon" it. [ECF No. 27, PageID.83-90].

To justify a warrantless search based on third-party consent, the government must show that the third party had either common authority over the property or a sufficient relationship to the area or effects being searched. *See United States v. Matlock*, 415 U.S. 164, 171 (1974). ("Even if a third party does not possess actual common authority over the [item searched], the Fourth Amendment is not violated if the police relied in good faith on a third party's apparent authority to consent to the search."). Apparent authority is judged by an objective standard. A search consented to by a third party without actual authority over the premises is nonetheless valid if the officers reasonably could conclude from the facts available that the third party had authority to consent to the search. *See United States v. Gillis*, 358 F.3d 386, 390–91 (6th Cir. 2004).

Also, a person who abandons property does not have Fourth Amendment protection. *See Abel v. United States*, 362 U.S.217, 241 (1960). A defendant forfeits any legitimate expectation of privacy he might have in a property when he abandons that property. *Id.* "[T]he notion of 'abandonment' turns upon whether a person can claim a continuing, legitimate expectation of privacy in the item at issue." *United States v. Labelle*, 390 F. App'x 539, 541–42 (6th Cir. 2010). "No Fourth Amendment 'seizure' occurs where the government appropriates abandoned property. Abandonment cases differ from standing cases." *United States v. Wilson*, 472 F.2d 901, 902 (9th Cir. 1972); *United States v. Manigault*, No. 22-1922, 2024 WL 4298144, at *4 (3d Cir. Sept. 26, 2024). [I]f an item has been abandoned, neither the Fourth Amendment interest [in retaining possession of property or maintaining personal privacy] is implicated, and neither probable cause nor a warrant is necessary to justify seizure." *Id*. at 4.

The government argues, by giving the phone away, he effectively *abandoned* it and relinquished any reasonable expectation of privacy in its contents. [ECF No. 32, PageID.110]. As a result, no Fourth Amendment violation occurred, and the Court should deny Lewis's motion on that basis. [ECF No. 32, PageID.111]. To support its proposition, the government relies on *United States v. Gregg*, 771 F. App'x 983, 986 (11th Cir. 2019), and urges the Court to adopt its reasoning. *Id*. In that case, the court held that the defendant lacked standing because he had

abandoned the phone when he moved out and made no effort to recover it. The court reasoned that he had abandoned the phone because the defendant had been living with his girlfriend and owned both a phone and a tablet. Weeks before the search, the defendant left both devices behind. He never prohibited his girlfriend from using the phone or otherwise restricted her access, as she had the password and could use it. Part of the court's decision was that, when the defendant moved out, he took the newer iPhone but did not attempt to retrieve the old one.

Similarly, the government argues that Lewis abandoned his phone after he gave it to W-1. He knew she had the cell phone and had his password a month prior to him being arrested. *See* Gov't Ex. 2A-B, 3A-B In addition, he believed that he restarted and deleted everything off his phone prior to giving it to her. *Id.*[4]

The Court agrees with the government argument that Lewis abandoned his phone. It is true that when an individual knowingly allows another person to possess their phone and provides the password, thereby granting unrestricted access, they relinquish any reasonable expectation of privacy in the phone's contents, including information that is password protected. That is what happened here.

[4] Volunteering a password to others who are plainly curious to access a phone's contents is not a "normal precaution to maintain [ ] privacy," but an action suggesting an intent to relinquish any actual expectation of privacy. *United States v. Guerrero-Torres*, 762 F. App'x 873, 876 (11th Cir. 2019).

Next the government argues that W-1 gave valid third party consent for law enforcement to search the cell phone under the common authority and apparent authority doctrine. [ECF No. 32, PageID.114]. Common authority is derived not from a mere property interest in the object or area to be searched, but rather from "mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the [property] to be searched." *United States v. England*, No. 21-5273, 2023 WL 1777533, at *4 (6th Cir. Feb. 6, 2023). "Apparent authority is judged by an objective standard. A search consented to by a third party without actual authority over the premises is nonetheless valid if the officers reasonably could conclude from the facts available that the third party had authority to consent to the search." *United States v. Morgan*, 435 F.3d 660, 663 (6th Cir. 2006).

Here, W-1 had both common authority and apparent authority. First, she exercised common authority because Lewis had given her the phone, and the password, allowing her to access all the data stored on it. Wyandotte officers reasonably believed that she had apparent authority because when she went to make a complaint at the police station,W-1 demonstrated that she knew the password and explained that Lewis had given her the phone after he obtained a new iPhone.

The officers perceived that Lewis gave W-1 his old iPhone because he had acquired a new one and had simply forgotten to sign out of his iCloud account, which left her with full access. In light of the facts presented to them, the court finds that the officers reasonably concluded that W-1 had authority to consent to the search.

Next, the government argues that law enforcement did not violate the Fourth Amendment when W-1 who is considered "a private citizen" discovered the contents of the cell phone, and that the officers never exceeded the scope of the private search. [ECF No. 32, PageID.118]. The court agrees. "To demonstrate that a person was acting as an agent of the government: "First, the police must have instigated, encouraged or participated in the search" and "[s]econd, the individual must have engaged in the search with the intent of assisting the police in their investigative efforts." *United States v. Hardin*, 539 F.3d 404, 419 (6th Cir. 2008). When, "the intent of the private party conducting the search is entirely independent of the government's intent to collect evidence for use in a criminal prosecution, we hold that the private party is not an agent of the government." *Id*.

Here, W-1 was not an agent of law enforcement because she went to the police station on her own as a apparently concerned individual. She was neither forced nor encouraged by Carpeaux or Haskin; rather, she acted based on what she reportedly saw on the phone. There were no preexisting investigative efforts by Carpeaux or Haskin. The investigation arose only after W-1 provided officers with the text

messages, communications, and photos that she had discovered outside the presence of law enforcement. W-1 was not acting as an agent or instrument of the officers.

Lastly, the government argues that the inevitable discovery exception to the exclusionary rule applies to the facts presented to the Court, if the Court finds that officers unlawfully searched the cell phone. [ECF No. 32, PageID.12]. "[T]he inevitable discovery exception to the exclusionary rule applies when the government can demonstrate either the existence of an independent, untainted investigation that inevitably would have uncovered the same evidence or other compelling facts establishing that the disputed evidence inevitably would have been discovered." *United States v. Keszthelyi*, 308 F.3d 557, 574 (6th Cir. 2002). For an inevitable discovery exception to apply, the government must prove: "(1) a reasonable probability that the evidence in question would have been discovered by lawful means but for the police misconduct; (2) that the police possessed the leads making the discovery inevitable at the time of the misconduct; and (3) that the police were actively pursuing [an] alternate line of investigation prior to the misconduct." *United States v. Kennedy*, 61 F.3d 494, 499 (6th Cir. 1995)(quoting *United States v. Webb*, 796 F.2d 60, 62 (5th Cir. 1986). The government asserts that, even if officers had not searched the phone, they would have obtained a warrant based on W-1's statements about the danger to the minor victims under the facts that were presented to them. [ECF No. 32, PageID.126].

The court agrees. Allegations of child pornography, abuse, and/or assault are serious in nature. W-1 made a complaint to police and described what she had seen in the phone. W-1 complained that she saw disturbing images and text messages about Lewis' fixation on underage children. Haskin prepared the initial search warrant and testified at the evidentiary hearing that she never asked W-1 to search the phone; rather, W-1 voluntarily provided the phone. Haskin further testified that she did not independently examine the phone. W-1 described what she observed to Haskin and Carpeaux on the iPhone before turning it over, and testimony indicated that W-1 had possessed the iPhone for only a few days. Haskin also stated that she still would have sought a search warrant.

Accordingly, for the reasons set forth above,

IT IS SO ORDERED that Defendant's Motion to Suppress Evidence [ECF No. 27] is **DENIED**.

s/Denise Page Hood
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE

DATED: August 26, 2026